UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

February 20, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:   *Raymond D. v. Frank Bisignano, Social Security Administration*
      Civil No. 1:25-cv-01784-JMC

Dear Counsel:

Raymond Devan ("Plaintiff") petitioned this Court on June 5, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claim for supplemental security income benefits ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 12, 14). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

### I.     Procedural Background

Plaintiff filed an application for SSI on March 18, 2022, alleging disability as of February 20, 2022. (Tr. 17).[1] The SSA denied his claim initially on December 14, 2022 and again upon reconsideration on May 16, 2023. *Id.* Plaintiff filed a request for a hearing on June 8, 2023, and appeared by way of a video hearing on May 16, 2024, before an Administrative Law Judge ("ALJ"). *Id.* ALJ Gary Ball denied Plaintiff's claims on July 3, 2024. *Id.* at 30. Plaintiff appealed, and the decision became final when the Appeals Council concluded there was no basis upon which to grant Plaintiff's request for review. *Id.* at 1-5.

### II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920.

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 12) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

"To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since March 18, 2022. (Tr. 19). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "Dandy-Walker malformation; obesity; posttraumatic stress disorder; bipolar disorder; a generalized anxiety disorder; a panic disorder, with agoraphobia; hypersomnia." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ reasoned in part:

> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant has alleged subjective memory issues, but the objective evidence does not support the presence of acute limitations. During the 1st consultative examination, the claimant "displayed immediate and delayed auditory recall of three words (6)" (Ex. 4F, 2). During the second consultative examination, the claimant was able to remember 3 words immediately after hearing them and then none several minutes later, and he knew the current and past Presidents, the complete date, day of the week, city, county, state, season, what floor he was on, and why he was here (Ex. 6F, 3). He was able to repeat a phrase, read a command and follow it, and then follow a simple, 3-step command. He was able to copy overlapping designs (Ex. 6F, 3). He was able to repeat a phrase, read a command and follow it, and then follow a simple, 3-step command (Ex. 6F, 3). In the later part of 2023, the claimant was administered the Saint Louis University Mental Status exam , which indicated a neurocognitive disorder, but it was characterized as "mild" (Ex. 9F, 42-43). The claimant has been chronicled throughout mental health treatment notes with intact memory, even while alleging worsening memory issues, which is inconsistent with his allegations of memory problems (Ex. 2F, 8; 5F, 12, 76, 239; 9F, 11, 14, 18, 21, 24, 51, 58, 61). This evidence does not support the presence of acute limitations in understanding,

2

> remembering, or applying information, but considering the evidence, and the claimant's allegations, in the light most favorable to the claimant, the undersigned finds that the claimant has moderate limitation in this area.
> …
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. Again, there is limited objective evidence to support the claimant's subjective reports of problems with concentrating and completing tasks (Ex. 9E, 7). During the consultative examinations, the claimant was described as unable to do serial 7's (Ex. 4F, 2; 6F, 3). However, the claimant has been chronicled throughout mental health treatment notes as "attentive," with no signs of attentional or hyperactive difficulties (Ex. 7F, 11; 9F, 1, 8, 33, 36, 39, 45-46, 48, 54, 56, 65). The claimant has endorsed hobbies including video games, watching television, and reading non-fiction, which require sustained concentration and persistence (Ex. 4F, 2). The evidence does not support that the claimant has significant problems in concentrating, persisting, or maintaining pace, but considering his allegations in the light most favorable to the claimant, the undersigned finds that the claimant has a moderate limitation in concentrating, persisting, or maintaining pace.

(Tr. 21-22). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that the claimant can perform no climbing or ladders or scaffolds, with only occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling, and balancing. The claimant can have no exposure to hazards such as unprotected heights or dangerous machinery. The claimant is limited to understanding and carrying out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can perform no work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas. The claimant can have occasional interaction with supervisors and coworkers, but no contact with the public. The claimant is limited to work requiring only occasional changes in the routine work setting.

*Id.* at 23. Plaintiff correctly points out that to reach that decision, the ALJ summarized the medical records and Plaintiff's testimony. *Id.* at 23-28. For example, the ALJ reasoned:

> The claimant alleged that he has posttraumatic stress disorder, hypertension, and narcolepsy (Ex. 1E, 2). The claimant alleged in his function report that he has trouble with sleep; that he avoids people; and that he is affected in his ability to talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others (Ex. 9E, 7). At the hearing, the claimant alleged that he gets anxious and has headaches; that he is overwhelmed by noise and crowds; that he has panic/anxiety attacks; that he cannot go outside "sometimes;" that he has poor sleep and trouble concentrating; that he has poor energy; that he "shakes" when

> around people; that he cannot concentrate or focus; that he has memory issue and cannot remember conversations; that his medications only "sometimes" help; that he has depressive symptoms of helplessness, hopelessness, guilt, or worthlessness; and that he has flashbacks.
>
> …
>
> The claimant has alleged that his limitations are primarily mental health in nature. As a threshold matter, the undersigned is cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the claimant's psychological symptoms and their effect on his functioning have been considered together, instead of separately, regardless of the diagnostic label attached.
>
> Jail records from before the claimant's alleged onset date do reflect that he underwent some therapy for hypervigilance and impulse control (Ex. 1F, 35). However, in February of 2020, the claimant was described as having met his goals of reducing his symptoms, and he was described with a normal mental status examination (Ex. 1F, 35-46). The claimant sought mental health treatment in March of 2022, alleging posttraumatic stress disorder from his 20-year prison sentence (Ex. 2F, 8). He endorsed anger issues, with "passing out," but aside from being described as "anxious" and "restless" the claimant had a normal mental status examination; the claimant was described as calm and attentive; with an appropriate affect, with a full range; with no signs of depression or elevated mood; intact associations; no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process; fair insight and judgment; with no signs of hyperactive or attentional difficulties (Ex. 7F, 11).

*Id.* at 23-24. The ALJ also considered that:

> In June, the claimant related that he had gone to a concert and tolerated the noise and people better than a few weeks ago (Ex 9F, 33, 36). His mental status examination was again normal (Ex. 9F, 33). In July he alleged severe anxiety attacks, brain fog, and memory issues (Ex. 9F, 39). However, only "mild" neurocognitive issues were indicated on a St. Louis University Mental Status exam (Ex. 9F, 42-43). The claimant was continuing to allege memory issues in September of 2023, but also continued to be noted with a normal mental status exam (Ex. 9F, 45- 46).
>
> In October of 2023, the claimant reported that he was "doing well," and that he had just gone on a "mini vacation" with his aunt and uncle, and that he had a job as an extra in a movie (Ex. 9F, 48). His mental status examination continued to be normal (Ex. 9F, 48-49). In November and December, the claimant was endorsing only "discomfort" over having lots of people in the home for the holiday, but with no reported panic attacks or aggression, and with the claimant having a normal mental status examination, with no signs of anxiety (Ex. 9F, 51-54).

> The claimant was alleging a worsening of his symptoms, including mood swings in 2024, but he was inconsistently described with unchanged, and normal, mental status examinations (Ex. 9F, 61-65) It was specifically noted that the claimant had no serious mental status abnormalities; that he exhibited neither depressed mood nor mood elevation; that there were no signs of cognitive difficulty; that his memory was intact; that the claimant had no signs of anxiety; and that the claimant had a normal attention span, with no signs of hyperactivity, and that his judgment and insight were intact (Ex. 9F, 61, 64). The claimant was "relaxed" and "attentive" (Ex. 9F, 65). The claimant has been diagnosed with hypersomnia, but his normal mental status examinations does not support the presence of significant functional limitations from this condition (Ex. 9F, 5, 24). This evidence is not consistent with the reported severity of the claimant's symptoms.

*Id.* at 26. Prior to the established date of disability onset, the ALJ concluded that Plaintiff did not have past relevant work. *Id.*

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) laborer, stores, Dictionary of Occupational Titles code 922.687-058, with 34,000 jobs in the national economy; (2) routing clerk, Dictionary of Occupational Titles code 222.687-022, with 118,000 jobs in the national economy; and (3) marker, Dictionary of Occupational Titles code 209.587-034, with 116,000 jobs in the national economy. *Id.* at 29.

### III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV. Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's RFC determination on several grounds that each fall under two primary arguments: (1) the ALJ erroneously assessed Plaintiff's RFC and (2) the ALJ erroneously assessed Plaintiff's subjective complaints. (ECF No. 12). For the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence. As such, I will remand the case.

    a. <u>The ALJ's and Appeals Council's RFC Determination is Not Supported by</u>

5

Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

i. *The ALJ Improperly Determined Plaintiff's RFC*

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636. Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial

review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

As an initial matter, it is well-taken that much of the ALJ's RFC analysis is based on a summary recitation of the medical records and certain portions of the testimony with limited analysis. Tr. 23-28. Such an approach can frustrate meaningful review when the Court must guess at how the ALJ reached its conclusions. *Mascio*, 780 F.3d at 638. To that end, Plaintiff faults the ALJ for failure to explain how summary review of the medical records supports his conclusions. (ECF No. 12). Specifically, Plaintiff faults the ALJ for failing to explain "how he determined that the Plaintiff was capable of understanding and carrying out simple instructions, using judgment to make simple work-related decisions, performing no work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas, tolerating occasional interaction with supervisors and coworkers, but no contact with the public, and was limited to work requiring only occasional changes in the routine work setting." (ECF No. 12 at 8) (citing Tr. 23). Second, Plaintiff faults the ALJ for failure to "include appropriate limitations related to [the severe impairments] in [Plaintiff's] residual functional capacity assessment, without explanation. *Id.* It shall be necessary only to address the first argument.

The Court is persuaded that the ALJ's RFC analysis does not build a logical bridge such that the Court can review how the RFC address Plaintiff's limitations. In *Emily W. v. Kijakazi*, Civil No. AAQ 21-01194, 2022 WL 2681158, at *4 (D. Md. July 12, 2022), this Court remanded an ALJ's decision for failure to build a logical bridge under the RFC determination. *Id.* There, the plaintiff's symptoms included "depression, anxiety, suicidal ideation, PTSD, memory loss, completing tasks, concentrating, understanding, and following instructions." *Id.* However, when the ALJ concluded that certain limitations were appropriate in response to each claim, the failure to build a logical bridge for each conclusion warranted remand. *Id.* There, the Court's analysis focused on the lack of a narrative available for review. *See id.* In *Jeffrey B. v. Saul*, the Court similarly reversed a case when the ALJ failed to explain how the RFC determination supported the plaintiff's limitations. *Jeffrey B. v. Saul*, Civil No. GLS 20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) (reasoning that the ALJ only mentioned three of the plaintiff's three remaining functional limitations when "rattling off a laundry list" of the evidence).

As Plaintiff points out, the RFC determination does not contemplate Plaintiff's agoraphobia or hypersomnia, both of which the ALJ determined are severe impairments. (Tr. 19); *See Jeffrey B.*, 2021 WL 797920, at *3. Nor does the RFC analysis address how limitations like carrying out simple instructions, using judgment to make simple work-related decisions, performing no work at a specified production-rate pace, or tolerating occasional interaction with supervisors and coworkers but not the public would address agoraphobia or hypersomnia. *See id.* Plaintiff also correctly points out that the vocational expert testified that if an individual is off-task greater than ten percent of the workday (or absent greater than one day per month), that individual would not be able to maintain employment. Tr. at 53-54. Where the ALJ described many of Plaintiff's symptoms like anger issues, passing out, anxiety, restlessness, varying depression symptoms, and PTSD stemming from a twenty-year prison sentence, the ALJ did not address how

Plaintiff would be able to work ninety percent of the day such that he could maintain employment. *Jeffrey B.*, 2021 WL 797920, at *3. Here, the Court is forced to guess at how Plaintiff's limitations would be accounted for by the RFC. On this issue, the Commissioner reiterates the ALJ's reasoning, also without explaining how a recitation of the medical evidence and some testimony provides the Court with an opportunity for meaningful review. (ECF No. 14 at 12-13). Where the Commissioner is correct that the ALJ "provided the types of tasks that Plaintiff could perform, the types of instructions he could understand, the type of changes he could deal with in a work setting, and the type of interactions that Plaintiff could have," these summaries of some of the medical evidence do not allow the Court to understand how the RFC supports working ninety percent of the day. *Jeffrey B.*, 2021 WL 797920, at *3. The testimony clearly demonstrates periods of intensity or a lack thereof, as is common in such disabilities and reflected in Plaintiff's testimony. *C.f. Hultz v. Bisignano*, 162 F.4th 111, 124 (4th Cir. 2025) (noting that the ALJ failed to explain how some instances of normalcy undermine a claim based on fibromyalgia pain, which "is known to wax and wane"); *see also Shelley C. v. Comm. Soc. Sec. Admin.*, 61 F.4th 341, 359 (4th Cir. 2023) (remanding an ALJ's opinion when the RFC analysis characterized a plaintiff's treatment as "routine and conservative" even though the plaintiff suffered from repeated depressive, harmful, and suicidal thoughts and there is a "growing conversation surrounding chronic disease, highlighting, in particular, the unique and subjective nature of chronic depression"). Thus, without some explanation building a logical bridge from this kind of evidence to the RFC determination, the Court cannot engage in a meaningful review.

### V.     Conclusion

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council inadequately explained Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge